JOHN McNULTA, RECEIVER,

V.

JOHN ENSCH.

*Railroads—Personal Injuries—Failure to Make Sufficient Stop to Discharge Passengers—Contributory Negligence—Conflict of Evidence—Instructions.*

1. Where a train comes to a stop in about the usual time and at about the usual place, after the announcement of a station, a person on board is

justified in presuming that it is for the discharge of passengers, and may recover damages for injuries received while attempting to alight.

2. The fact that the train starts after a moment and stops a reasonable time a few yards further on, can not affect the right of recovery.

3. The plea of not guilty on the part of the alleged receiver of a railroad company in an action by a passenger to recover for injuries received, renders it unnecessary to prove his official character.

[Opinion filed February 21, 1889.]

In ERROR to the Circuit Court of Sangamon County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. G. B. BURNETT and ISHAM, LINCOLN & BEALE, for plaintiff in error.

Mr. CHARLES A. KEYES, for appellee.

PLEASANTS, J. On the night of January 14, 1888, defendant in error was a passenger on the lightning express train of the Wabash railway from Springfield to Starnes, distant three miles east, and in getting off was, by its sudden motion, thrown between the cars and the station platform, and seriously injured; for which this action was brought.

The negligence alleged and relied on was in failing "to stop the train * * * a sufficient length of time to allow the plaintiff safely to get off." Plea, not guilty; verdict and judgment for plaintiff for $2,500 damages.

Starnes was a small settlement consisting of a few miners' houses about a coal shaft. The lightning express was not scheduled or advertised to stop at that station, but as there was a crossing of the Illinois Central railroad about five hundred feet east of the platform there, that train, like all others going that way, in making the stop required for the crossing would naturally make it at or near that platform. And hence the residents, returning from Springfield, and others coming from the west to Starnes, availed themselves of that train as freely as of those scheduled to stop there, paying fare to the conductor.

Ensch was a miner at the Starnes shaft, and January 14th was pay-day. As usual at such times, he, with others, had

gone to the city in the afternoon to get his pay, and it was on his return that he received the injury in question. There were twenty or more other passengers for Starnes on that train, including some women and children. Ensch testified that, knowing the stop would not be long, and that so large a number were to be there discharged, he had taken his place on the rear platform of the second car, to be ahead of the crowd and get off as soon as he properly might when it should stop; that it did stop at the platform; that he thereupon first placed upon the platform a gallon jug which he had carried, and was in the act of stepping off himself when the train started up with a jerk, and so, without any fault or carelessness on his part, threw and injured him as stated.

On behalf of defendant it was claimed that the train had only slacked up when plaintiff attempted to get off; that it continued to move on some fifty or sixty yards further east; that the jerk spoken of was due to the taking off of the airbrakes, and that his injury is to be charged to his own recklessness in making the attempt while the train was in motion.

It appears that at the point referred to as further east, it did stop, and there the other passengers for Starnes were all discharged. It was not the place, however, at which that train usually stopped, nor was it so convenient or safe a place for the discharge of passengers as the platform.

Whether it did or did not stop at the place where plaintiff attempted to get off, was the only controverted question of fact, and upon its determination the case seems to have depended. Upon that question the testimony was conflicting, each side introducing quite enough, in the absence of any evidence to the contrary, to establish its own contention. For the defendant the four train hands—conductor, engineer, fireman and brakeman—testified that it did not; but some of them spoke rather from their knowledge of the usual course of that train than from any particular recollection of the circumstances on the occasion in question, to which their attention was not called until some time afterward. Three passengers for Starnes also testified to the same effect; but their observation was made from within the coach, and it was at night.

McNulta v. Ensch.

Three others said they did not notice any such stop, but were not positive and did not claim to have given the matter special attention at the time. Another thought it did not really come to a stand-still, but stopped long enough to have made him attempt to get off if he had been on the steps of the coach.

On the other hand, seven passengers for Starnes, including the plaintiff, testified that it there came to a full stop, though but for a moment. The position of plaintiff was the most favorable for accurate observation, and he was very positive, as were also three of the others.

To decide upon the comparative weight of this conflicting testimony was clearly within the exclusive province of the jury, who saw and heard the witnesses, both as to the direct fact and as to the corroborative circumstances, if any, on the one side and the other. In such a case, our own opinion as to the preponderance, whatever it might be, would be immaterial.

It is further claimed by appellant that the declaration is to be treated as alleging that the train did not stop at the place where the defendant undertook to discharge the passengers for Starnes a sufficient length of time to allow appellee, in the exercise of proper care and diligence, to get off safely; and inasmuch as the evidence showed abundantly and without contradiction that it did stop long enough for that purpose at another place, a little further east, where all the passengers for Starnes excepting appellee were in fact discharged, the declaration was not only wholly unproved but clearly disproved, and therefore the verdict should have been set aside, notwithstanding any proof that it made a momentary stop where he attempted to get off. One of the instructions given for defendant seems to convey that idea, which the jury must have either misunderstood or disregarded. In application to this case we think it was misleading and erroneous, however sound as an abstract or general proposition. Just where defendant "undertook" to discharge the passengers they were not expressly informed in advance, nor could they otherwise know except from the actual conduct of the train. The conductor or brakeman announced the station, in the usual manner, just before it was reached, and if, following that

announcement, and in about the usual time afterward, it actually stopped at the station platform, passengers would be justified in presuming it was for the purpose of discharging them there and in proceeding to get off; and if, in the act of getting off while it was so stopped, and with due promptness and care, the plaintiff was thrown off and injured by the starting up of the train, that presumption would be conclusive upon the defendant. He could not avoid liability for such injury by stopping the train again a few rods further on, and there giving ample time for discharging the passengers. The jury must have found that it did so stop, and in that view the instruction was inapplicable, or so clearly improper, that in disregarding it no legal wrong was done to defendant.

It is also claimed that there was no evidence tending to show that defendant was the receiver of the railroad company; and that therefore the verdict, as against him, was wholly unsupported.

The record furnishes no intimation that this point was made in the court below. This was a suit against Mc-Nulta as the "superior," for injuries alleged to have been caused by the negligence of his servants, and the defense proceeded upon the plea of not guilty, and on the sole ground that they were not in fact guilty of the alleged negligence. We think this should be now held to have been a concession of their relation to the defendant, as averred in the declaration—which was a fact so publicly and generally known as to bring it almost, if not quite, within the range of judicial notice.

Perceiving no material error in the record the judgment will be affirmed.

*Judgment affirmed.*